## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| DRUG FAIR GROUP, INC., *et al.* | Case No. 09-10897 (BLS)<br>Joint Administration Pending |
| Debtors. | Hearing Date: March 20, 2009 @ 2:00 p.m. (ET)<br>Obj. Deadline: March 20, 2009 @ 2:00 p.m. (ET)<br>Related to Docket Nos. 13 |

## OBJECTION OF LEVIN MANAGEMENT CORPORATION TO DEBTORS' MOTION FOR AN ORDER APPROVING AGENCY AGREEMENT, STORE CLOSING SALES, GRANTING LIENS TO AGENT, ABANDONMENT OF PROPERTY AND GRANTING RELATED RELIEF

TO THE HONORABLE BRENDAN LINEHAN SHANNON,
UNITED STATES BANKRUPTCY JUDGE:

Levin Management Corporation ("Levin") by and through its undersigned attorneys, makes this Objection to Debtors' Motion for an Order Approving Agency Agreement, Store Closing Sales, Granting Liens to Agent, Abandonment of Property and Granting Related Relief (the "Motion"), and in support thereof aver as follows:

1. Levin is the owner or agent for the owners of various properties at which Debtors operate retail stores pursuant to written leases (the "Leases" and each a "Lease") which are affected by the relief sought by the Motion.

2. Levin's Clifton Plaza premises are premises located in a shopping center, as that term is used in 11 U.S.C. § 365(b)(3). *See In Re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990). The premises affected by the Motion are:

| PROPERTY | CITY/STATE | STORE # |
|---|---|---|
| 449 Lakeview Avenue | Clifton, NJ | 43 |
| Clifton Plaza | Clifton, NJ | 50 |

3. By the Motion Debtors seek, *inter alia*, approval of the right to conduct store closing ("GOB") sales, approval of an agency agreement with a liquidator and approval of the right to abandon property remaining at its stores.

## GOB Sales - Generally

4. The Motion contemplates the conduct of GOB sales at certain of Debtors' store locations, including both Levin properties. If such sales are permitted they must be subject to reasonable guidelines and protections for third parties.

5. Any GOB sales will contravene the provisions of Levin's Leases not only with regard to the conduct of the GOB sales in general but also insofar as Debtors seek to limit a landlord's rights to enforce the provisions of the Leases, including, but not limited to, the right to control signage.

6. While Levin understand Debtors' desire to maximize the value of the inventory in the stores, and that historically courts have granted debtors the right to conduct such sales, notwithstanding the seemingly contrary provisions of Section 365(d)(3), the sales must not be allowed to have a detrimental effect on Levin and the other tenants of its shopping center, and must not be allowed to subvert the requirements of § 365(d)(3) which specifically requires compliance with all of the terms of each of the leases.

7. This Court should neither engraft upon Section 363(b) an unfettered "right" to conduct "GOB" sales where that section of the statute pertains generally to the use, sale or lease of property of the estate other than in the ordinary course of business, nor invoke the provisions of Section 105(a) of the Bankruptcy Code, to effectively excise portions of the Leases where Section 365 specifically requires compliance with all lease provisions. Section 105(a) was never intended to allow courts to dispense with specific statutory mandates.

8.      In the event that the Court does allow Debtor to conduct store closing sales, such sales must be of limited duration, subject to reasonable guidelines and <u>balance the rights and interests of both Levin</u>, whose leases Debtors seek to breach, <u>and the landlords' other non-debtor tenants,</u> who must compete for the consumer's retail dollars without the benefit of being allowed to breach signage and other restrictions in such tenants' leases or are otherwise affected by the proposed activities.

9.      As the Bankruptcy Court stated in *In re: Ames Dep't Stores*, 136 B.R., 357 (Bankr. S.D.N.Y. 1992) (cited by Debtors to support their right to conduct GOB sales) with regard to proposed GOB sales: **"§ 363(e) <u>reserves for Bankruptcy Courts</u> the discretion to condition the time, place and manner of store closing sales <u>thereby providing adequate safeguards to protect shopping center landlords and their other tenants</u>, …." [Emphasis added]**

### Sale Guidelines and Procedures

10.     Debtors have attached to the Motion, as an exhibit to the Agency Agreement, Sale Guidelines (the "Guidelines", and each a "Guideline") which cover many of the issues which are important to Levin when GOB sales are permitted at their premises. Nevertheless, there remain a number of issues which must be resolved.

11.     Levin object to the use of any exterior signage and/or banners (see Guideline D) at any of its locations except as set forth herein. Levin demands that Debtors and the liquidator prove, by competent evidence, the necessity for any proposed exterior banners. Debtors' Leases do not give Debtors the right to use any space in any shopping center, building of which the premises are a part or at any other location, outside of the premises for any purposes other than, perhaps, the installation of store identification signs strictly in accordance with the landlord's sign and design criteria. No provision of the Bankruptcy Code empowers the Court to

allow a debtor to use a third party's property without the third party's consent. In many instances, the property lying outside the interior premises is common area property which all tenants have an undivided right to use pursuant to the terms of their leases. The fact that Debtor has filed a voluntary petition under the United States Bankruptcy Code does not suddenly grant it the right to use property that it has not leased for any purpose whatsoever, including the posting of GOB sale signage.

12. In the event that this Court allows the use of exterior banners at certain store locations, such banners must be limited to the <u>size and location of Debtors' existing exterior signs,</u> not be larger than the <u>shorter</u> of 30' by 4' or the length of the wall on one side of the premises, and only be placed in or on that part, or those parts, of the premises that are actually leased by Debtors. Signage must not be permitted in any other area of either the shopping center or the building of which the premises are a part and no other exterior devices, such as balloons, may be permitted in any other areas of Levin's shopping centers or buildings. In addition, exterior banners must be limited to one per store and affixed without drilling or otherwise penetrating either the façade of Levin's buildings or the roof of any such building. Such penetrations may well have the effect of voiding landlords' warranties.

13. Further, in any shopping center where the subject premises faces an interior area without a reasonable view of a highway or street, the employment of exterior banners should be prohibited. Finally, no exterior banners should be permitted absent prior notification to local authorities with jurisdiction over the shopping center.

14. Guideline #A indicates that sales will "remain open no longer than normal hours". Such language would permit Debtor to operate less than the hours required by the

Leases, perhaps even just a few hours a day. All stores must be operated in accordance with the operating hours of the Leases.

15. Debtor requests that "sign walkers" and street signage be permitted despite any state or local laws to the contrary. (See Guideline #D) Such advertising is particularly offensive and gives the area a cluttered look not in keeping with the look Levin have attempted to preserve for their properties. No signage or sign walkers may be allowed on Levin's property or any adjacent sidewalks. Moreover, such signage should not be permitted <u>without giving notice to each affected governmental unit</u> and affording said unit an opportunity to be heard. Governmental officials have complained that sign walkers in particular cause traffic hazards.

16. There are no guidelines regarding the number and size of signs which may be employed. A Guideline should be included to limit the number of window and interior signs, and the size thereof, to be used in the stores and store windows. No more than six (6) signs per 1000, square feet and no larger than 30"x36", each should be allowed to be employed within the stores themselves. Interior banners should be limited to no more than 1 per store, no larger than 3'x15' and set back at least 1/3 of the way from the front of the Premises. Window signs must not be affixed to any windows, be set back at least twelve (12") inches and not cover more than fifty (50%) percent of any window.

17. Guideline #B would permit distribution of handbills, leaflets and other written materials "if distribution is customary in the shopping center in which the Store is located." No such distribution should be permitted unless permitted by Debtors' particular Lease(s). What may or may not be customary in a particular shopping center is a matter for interpretation and may very well be permitted in some leases and forbidden by others.

DMEAST #10225980 v1

18. Guideline #C states that at the conclusion of the Sale the Agent may leave the premises in the same condition as on the commencement of the Sale. This Guideline should be clarified to state that the condition in which the Agent either took or leaves the premises does not relieve Debtors of their responsibilities to maintain the premises in the condition required by the Leases.

19. Guideline #G states that the Agent shall not make any alterations to the interior or exterior lighting of the store. Neither the agent nor the Debtor may make <u>any alterations whatsoever</u> to the premises except strictly in accordance with the terms of the lease. It is agreed, however, that the hanging of signs consistent with the terms of the approved Guidelines is not to be considered an alteration.

20. Guideline #N should be modified to reduce the time period to three (3) days.

21. To the extent that a landlord reaches an agreement with the Debtors or their liquidator for modification of any approved guidelines, such agreement or "side letter" should control over any court approved guidelines, and a provision should be added to the Sale Order to so provide.

22. Levin also request the inclusion in the Guidelines, or the Order approving same, of a provision which provides for the indemnification of Levin by the Debtors and any liquidation agents in the event that Levin receive citations from local authorities as a result of the conduct of GOB sales in general, and the signage employed with regard thereto in particular. In the past certain landlords have received citations because the signage employed by the agent violates local ordinances. Since the ordinances may be applicable to the landowner, local authorities have issued the citations notwithstanding the orders of the Bankruptcy Courts which

purport to allow these sales to be conducted by debtors without interference from such local authorities. Accordingly, in the event that an Objecting Landlord does receive any such citations, Levin request that this Court order the Debtors and any agent to indemnify and hold Levin harmless from any and all costs, fines, and attorneys' fees which Levin are required to pay or expend in defense of such citations in the event that Debtors and the Agent are unable to have the local authorities withdraw such citation or citations. Further, any provision of a sale order exempting Debtors and the liquidator from action by various governmental authorities should also extend to Levin.

## GOB Sales and Payment of "Stub Rent"

23. As set forth in the Motion, Debtors propose to conduct GOB Sales through the employment of a professional liquidator. The GOB Sales are scheduled to begin on March 21, 2009, a mere three (3) days after Debtors filed their voluntary petitions.

24. At the time of filing Debtors had not paid either their February or March rent for Levin's Clifton Plaza store. While it is conceded that the law in this Circuit is that a debtor need not pay the current month's rent when the debtor files its voluntary petition after the first of the month, Courts in this District have held that such "stub rent" is entitled to an administrative priority under Section 503(b) of the Bankruptcy Code. *See, In re Goody's Family Clothing, Inc.*, 392 B.R. 604 (Bankr. D. Del. 2008).

25. There can be no doubt but that Levin's Clifton Plaza is essential to the administration of this estate since this is one of the very premises that Debtors seek to employ in order to conduct their GOB sales.

26. Pursuant to the terms of the Agency Agreement the liquidator is required to reimburse the Debtors for the Debtors' occupancy costs at Levin's leaseholds [See Agency Agreement at § 4.1(l)] for the period commencing with the Sale Commencement Date.

7

Accordingly, Debtors will receive payment for the occupancy costs for all but three (3) days of the stub rent period.

27. While the timing of administrative expenses is admittedly discretionary (*See, Goody's I, supra*), under similar circumstances debtors have been ordered to pay over to their landlords the occupancy expense reimbursements received from their liquidators. *See, In re ZB Co. Inc.,* 302 B.R. 316 (D. Del. 2003).

28. Under the particular facts of this case, the failure to pay the stub rent should also be considered as equivalent to the use of Levin's cash collateral entitling Levin to either payment of the stub rent on a current basis or some form of adequate protection. Absent such rental payment, or adequate protection, Debtors' request to conduct GOB sales at its leasehold premises should be denied.

### Abandonment of Property

29. Debtors request the right to abandon property of the estate ("their remaining FF&E or other assets") and that such abandonment shall be "without liability to any person or entity". (Motion at ¶ 50) More and more debtors refuse to remove their property from a landlord's property because such removal would be burdensome, despite the fact that removal is required by the terms of Debtors' leases. Debtors thereby thrust on the landlord the removal cost and when the landlords then seek to recover the costs of such removal, debtors take the position that those expenses are unsecured claims, thereby converting the debtor's administrative expense liability to an unsecured claim. Here, by the language of the Motion, Debtors apparently do not even concede that these expenses may be unsecured claims since they ask for the abandonment to be "without liability to any person or entity." (*But see,* Motion at ¶ 51).

30. Any grant of the right to abandon property should be coupled with the grant of an administrative claim to the landlord for the reasonable costs of removal of that

8

property. Further, the abandonment should not be effective until the effective date of rejection of the Lease. Otherwise Debtors' have abrogated responsibility for the property while still controlling the premises.

31. Any authorization for the Debtors to abandon property in the premises must also provide for notice to third parties to remove any of such parties' property prior to the rejection date. Landlords must be granted the right to dispose of any abandoned property without liability to any other party.

### Reservation of Rights

32. Levin reserves the right to make such other and further objections as may be appropriate

### Joinder in Other Landlord Objections

33. Levin hereby joins in the objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the provisions hereof.

**WHEREFORE,** Levin prays for relief consistent with the foregoing objections; and for such other and further relief as may be just and required under all of the circumstances

Dated: March 20, 2009
Wilmington, Delaware

Respectfully submitted,

/s/ Leslie C. Heilman
Tobey M. Daluz, Esquire (No. 3939)
Leslie Heilman, Esquire (No. 4716)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
Email:  daluzt@ballardspahr.com
        heilmanl@ballardspahr.com

and

David L. Pollack, Esquire
Jeffrey Meyers, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
51st Fl - Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 864-8325
Facsimile: (215) 864-9473
Email: pollack@ballardspahr.com
        meyers@ballardspahr.com

*Counsel for Levin Management Corporation*

DMEAST #10225980 v1